UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DEMOS P. DEMOPOULOS, STEPHEN MALONE,
MICHAEL SPINELLI, WILLIAM CASSESE and
JOHN A. CURCIO *as Trustee and Fiduciary of the
Local 854 Pension Fund*,

                      Plaintiffs,  **REPORT AND**
                                                                                     **RECOMMENDATION**
           -against-  CV 20-5186 (DRH) (ARL)

ADVANCE TRANSIT CO. INC.,

                      Defendant.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      This matter was referred to the undersigned by District Judge Hurley for the purpose of issuing a report and recommendation on whether the pending motion for a default judgment should be granted and, if so, the appropriate relief to be awarded to the plaintiffs. The plaintiffs have submitted a memorandum of law and the affidavits of Albert Alimena and Daniel Treiman, Esq., along with exhibits, in support of their motion. Despite having been served with the motion, the defendant, Advance Transit Co. Inc. ("Advance"), has not submitted papers in opposition. Based upon the evidence submitted, the undersigned recommends that a default judgment be granted and the plaintiffs be awarded $436,526 in withdrawal liability, $71,901 in interest through March 31, 2021, plus additional interest at a daily rate of $215.27 from March 31, 2021 through the date the judgment is entered, $87,305.20 in liquidated damages, $4,850 in attorneys' fees and $461.80 in costs.

## BACKGROUND

      The plaintiffs are the trustees and plan sponsors of an employee benefit plan or fund

1

within the meaning of Section 3(3) of ERISA, 29 U.S.C. §§ 1002(3). Compl. ¶¶ 4, 6. The Fund was established pursuant to various collective bargaining agreements ("CBAs") between Local 553, I.B.T. ("Union") (and its predecessor, Local 854, I.B.T.), and various employers who are required to make contributions to the Fund on behalf of their employees. *Id.* ¶¶ 4, 9. Advance was a party to and bound by a series of CBAs with Local 854, I.B.T. or its successor union, Local 553, I.B.T. *See* Alimena Aff. ¶ 4. Pursuant to those agreements, Advance was obligated to pay and, in fact, did pay contributions to the Fund on behalf of its employees who were covered by the agreements. *Id*. ¶ 5. According to the plaintiffs, Advance was also bound to the terms of a Trust Agreement governing the Fund. *Id*. Ex. A.

On October 1, 2019, Advance permanently ceased to have an obligation to contribute to the Fund and became subject to withdrawal liability under ERISA §§ 4201 and 4203(a), 29 U.S.C. §§ 1381 and 1383(a). *Id*. ¶ 6. The Fund calculated the present value of Advance's withdrawal liability to be $436,526. *Id.* ¶ 7. Then, by letter dated April 21, 2020, the Fund sent Advance a written demand for payment of its withdrawal liability. *Id.* The demand included a payment schedule by which Advance could pay thirteen quarterly payments of $34,403 followed by a final payment of $18,248. *Id*. The first payment was due by May 1, 2020. *Id*. The Fund also sent Advance instructions on how to challenge the Fund's assessment through arbitration. *Id.* Advance did not make any payments toward its withdrawal liability and did not challenge the Fund's assessment through arbitration. *Id*. ¶ 8. Accordingly, by letter dated June 1, 2020, the Fund notified Advance of its failure to make withdrawal liability payments and provided Advance sixty days to cure its default and make its withdrawal liability payments. *Id.* ¶ 9. Advance did not cure its default and, to date, has not made any payments toward its withdrawal

liability. *Id.* ¶ 10.

On October 27, 2020, the plaintiffs commenced this lawsuit seeking to recover withdrawal liability and attendant damages owed by Advance pursuant to the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001-1461 ("ERISA"), and the Trust Agreement governing the Fund (the "Trust Agreement"). ECF No. 1. Advance was served a copy of the summons and complaint by service on the New York State Secretary of State on November 2, 2020. *See* Treiman Aff. Ex. BB. Advance failed to answer or otherwise respond to the complaint. The plaintiffs moved for the entry of default and, on January 13, 2021, the Clerk of the Court certified Advance's default based upon its failure to answer or otherwise appear in this action. ECF No. 7. On April 14, 2021, the plaintiffs moved for a default judgment. ECF No. 9.

## DISCUSSION

### A. Legal Standard Governing Defaults

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are

3

deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted); *CIT Bank, N.A. v. Dambra,* No. 14 Civ. 3951, 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015) ("On a motion for default judgment, the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion."), report and recommendation adopted by, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159.

  B.  **Withdrawal Liability**

"Pursuant to 29 U.S.C. § 1381, in the event an employer completely or partially withdraws from a pension plan, the employer is liable to the plan for withdrawal liability 'in order to protect any future benefits that may have vested for employees covered by the plan.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.,* 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017) (citing *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5 (E.D.N.Y. 2001)). In such instances, "'the [F]und is vested with authority to determine the amount of withdrawal liability' and 'must then notify the withdrawing employer of its

withdrawal liability, set a payment schedule, and formally demand payment.'" *Id*. (quoting *Gesualdi v. Seacost Petroleum Prod., Inc.,* 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015). "The initial notification to the employer must occur 'as soon as practicable after an employer's complete or partial withdrawal.'" *Id.* (citing 29 U.S.C. § 1399(b)(1)). After receiving notification, "[v]arious statutory provisions afford the employer the opportunity to contest or challenge the plan's assessment of the employer's liability, or to request more information." *Daniello v. Planned Sys. Integration Ltd.,* No. 07-CV-1729 RRM VVP, 2009 WL 2160536, at *3 (E.D.N.Y. July 17, 2009) (citing 29 U.S.C. §§ 1399(b)(2), 1401). "ERISA [also] requires that disputes regarding the amount or assessment of withdrawal liability be resolved through arbitration." *Id.* (citing 29 U.S.C. § 1401(a)(1)). However, "[i]f the employer fails to make payments consistent with the procedure outlined above, the plan sponsor must again notify the employer of its default and, if not cured within 60 days of receiving notice of nonpayment, 'the fund is entitled to immediate payment of the employer's entire withdrawal liability, in addition to accrued interest on the total outstanding liability.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund*, 270 F. Supp. 3d at 606.

In this case, Advance is in default within the meaning of Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A) and 29 C.F.R. § 4219.33, based upon its failure to remit interim withdrawal liability payments notwithstanding its obligation to do so pursuant to the CBAs, the Trust Agreement and Sections 515 and 4219(c) of ERISA, 29 U.S.C. §§ 1145 and 1399(c). As indicated above, Advanced permanently ceased to have an obligation to contribute to the plan in October 1, 2019, thereby withdrawing from the Plan. *See* Alimena Aff. ¶ 6. As a result of the withdrawal, Advance became liable to the plaintiffs for withdrawal liability. The Fund prepared a report based on the formula set forth in ERISA § 4211(b) and determined

5

the amount of Advance's withdrawal liability to be $436,526. It, thereafter, notified Advance of the amount and demanded payment, but Advance did not respond. Nor did Advance challenge the Fund's assessment. *See UNITE Nat. Ret. Fund v. Veranda Mktg. Co.*, No. 04 CIV. 9869 (BSJ), 2009 WL 2025163, at *1 (S.D.N.Y. July 13, 2009) ("If neither party demanded arbitration within the statutorily prescribed time limits, the amounts demanded become due and owing on the schedule set forth by the plan sponsor, and the employer is estopped from challenging any factual determination of the plan sponsor concerning the assessment of withdrawal liability"). Accordingly, the plaintiffs have satisfied the statutory prerequisites necessary for an award of withdrawal liability and the entire unpaid amount of withdrawal liability is now due and owing. Therefore, the undersigned respectfully recommends that the plaintiffs' motion for a default judgment be granted and they be awarded $436,526 in withdrawal liability.

### C. Interest

ERISA provides that in any action to compel payment of withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution under 29 U.S.C. § 1445. *See* 29 U.S.C. § 1451(b). Thus, in addition to the amount of withdrawal liability due and owing, the plaintiffs are entitled to damages under 29 U.S.C. § 1132(g)(2), consisting of interest, liquidated damages and attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(2)(B). In fact, "[s]uch award is a mandatory remedy." *See UNITE Nat. Ret. Fund*, 2009 WL 2025163, at *4. Accordingly, when there is a default on the payment of withdrawal liability, a plan sponsor may be entitled to accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. *See Daniello*, 2009 WL 4722650, at *5.

In this case, the Trust Agreement provides for interest at the rate of 18% per annum. *See*

6

Alimena Aff. ¶ 12, Ex. D.  The plaintiffs calculated the interest due on the unpaid withdrawal liability from May 1, 2020, the day the first payment was due, through March 31, 2021, at a rate of 18% per annum, which amounts to $71,901, plus $215.27 per day from April 1, 2021 through the date judgment is entered.  *Id.*  The undersigned recommends that the plaintiffs be awarded interest in the amount sought.

### D. Liquidated Damages

29 U.S.C. § 1132(g)(2)(C) and the Trust Agreement, also allows for liquidated damages in an amount equal to the greater of interest on the unpaid contributions or 20% of the unpaid amounts due.  *See id.* ¶ 14.  Here, the plaintiffs seek an award equal to 20% of the unpaid withdrawal liability, which is $87,305.20.  The undersigned recommends that liquidated damages be awarded in that amount.

### E. Attorneys' Fees and Costs

Finally, 29 U.S.C. § 1132(g)(2) and the Trust Agreement also provide for an award of attorneys' fees and costs.  As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)).  The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue v. Kenny*

7

*A. Ex rel. Winn.*, 559 U.S. 542, 551 (2010) (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id*. at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 559 U.S. at 552.

The plaintiffs seek $8,111.25 in attorneys' fees and $461.80 in costs and have submitted copies of their counsel's contemporaneous time records, reflecting time spent, activities performed as well as costs incurred. *See* Treiman Aff. Ex. DD. The records reflect that plaintiffs' firm spent a total of 15.75 hours working on this matter. The work was performed by

8

three attorneys, namely, Jae W. Chun (a 2001 law school graduate and partner of the firm) who billed at a rate of $515.00 per hour for 1 hour; Anusha Rasalingam (a 1999 law school graduate and partner of the firm) who billed at a rate of $515.00 per hour for .25 hours; and Daniel Treiman (a 2017 law school graduate and associate with the firm) who billed at a rate of $515.00 per hour for 14.5 hours. The Court does not find these rates to be consistent with the rates awarded in this district in ERISA cases. Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in cases such as this. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers , Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp.*, No. 20 CV4980 MKB RER, 2021 WL 4755704, at *5 (E.D.N.Y. Aug. 16, 2021), report and recommendation adopted *sub nom. Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Genrus Corp.*, No. 20 CV 4980 MKB RER, 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021). Similarly, courts in this district generally award hourly rates of $200–$300 per hour for senior associates and $100–$200 per hour for junior associates. *See Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co.,* No. CV 19 2344 JS AKT, 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020). In fact, in order to account for the relative simplicity of ERISA default cases, courts in this district often approve rates that are closer to the lower end of this range. *See Gesualdi v. Seacoast Petroleum Prod., Inc., 9*7 F. Supp. 3d 87, 104 (E.D.N.Y. 2015) (citations omitted). Accordingly, the undersigned recommends that the partner rate be adjusted to $400.00 and the associate rate be adjusted to $300.

Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed. Courts uphold fee requests in ERISA cases when

they determine that the amount of time expended was not "excessive, redundant or otherwise unnecessary." *Trustees of the Metal Polishers Local 8 A-28A Funds, v. Superiro Scaffolding Serv. Inc.*, No. 12-CV-4251, 2013 WL 4095495, at *4 (E.D.N.Y. Aug 9, 2013). In this case, the plaintiffs' counsel expended a total of 15.75 hours on this matter, which the Court finds to be reasonable. Accordingly, based on the hourly rates suggested above, and the number of hours billed in this matter, the undersigned recommends that the plaintiffs be awarded attorneys' fees in the amount of $4,850. In addition, the plaintiffs seek and the undersigned recommends that plaintiffs be awarded $461.80 in costs.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiffs shall serve a copy of this Report and Recommendation on the defendant upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        December 17, 2020

                                                              /s/
                                          ARLENE R. LINDSAY
                                          United States Magistrate Judge